IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

DAVID D. GIBSON           )
                          )
v.                        )    No. 1:20-0082
                          )
KILOLO KIJAKAZI[1]        )
Commissioner of Social Security  )

**To:**   The Honorable William L. Campbell, Jr., District Judge

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 20), to which Defendant has filed a response. (Docket No. 21.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 8.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

No. 20) be **GRANTED,** the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this report.

# I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on August 23, 2017, and September 15, 2017, respectively. (*See* Transcript of the Administrative Record (Docket No. 18) at 53, 60.)[2] He alleged that he was unable to work, as of the alleged disability onset date of August 7, 2000, because of pain in the leg, shoulder, wrists, and back, as well as a prior heart attack. (AR 93.) The applications were denied initially and upon reconsideration. (AR 52, 60, 68, 77.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Brian Dougherty on March 29, 2019. (AR 31.) The ALJ denied the claim on June 21, 2019. (AR 15-17.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 13, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed a complaint in this Court seeking review of the ALJ's decision.

# II. THE ALJ'S FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since August 7, 2000, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

3. The claimant has the following severe impairments: obesity; coronary artery disease with stents; essential hypertension; degenerative disc disease of the cervical spine and the lumbar spine; neuropathy; post left knee repair; post right leg amputation (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 28, 1967 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 7, 2000, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 20-25.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not

4

disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed him to perform light work and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 20-25.)

### C. Plaintiff's Assertion of Error

Plaintiff presents two assertions of error: (1) that the ALJ ignored relevant evidence in formulating the RFC; and (2) that the ALJ failed to properly evaluate his subjective complaints. (Docket No. 20-1 at 8.) Plaintiff therefore requests that the Commissioner's decision be reversed and benefits awarded pursuant to sentence four of 42 U.S.C. § 405(g), or alternatively that the Commissioner's decision be remanded under either sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 13.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's assertions of error.

**1. The ALJ's Review of the Evidence.**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the assigned RFC improperly omits additional physical limitations that restrict his ability to work. Plaintiff argues that the ALJ selectively cited medical evidence to support his decision to the exclusion of evidence supporting limitations with respect to Plaintiff's ability to handle, finger,

6

and reach. Plaintiff does not specify what additional limitations should have been included but broadly accuses the ALJ of improperly assuming the role of a physician by interpreting medical findings "without relevant medical expertise to reach his conclusion." (Docket No. 20-1 at 9.)

Before addressing this argument, the Court notes that the relevant time period for Plaintiff's DIB claim ranges from August 7, 2000, the alleged onset date, to December 31, 2008, the date last insured ("DLI"), which represents the final date on which a claimant retains insured status for purposes of a DIB claim. The latter date is significant because a claimant seeking disability benefits must present evidence that he became disabled prior to the DLI. *See Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015) ("Claimant bears the burden of establishing that a disability began before his disability insurance expired."). For SSI applications, the inquiry focuses on whether the claimant was disabled on or after the application date, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993), which means that the relevant time period for Plaintiff's SSI claim is September 15, 2017, the SSI application date, to June 21, 2019, the date of the ALJ's unfavorable decision. (AR 15, 60.)

Plaintiff identifies no evidence in his brief indicating that he suffered from any disabling impairment prior to December 31, 2008. The only pre-DLI evidence in the administrative record shows a series of lumbar nerve blocks he received between 2005 and 2007 (AR 426-27, 429-33, 436-39, 441-42), but nothing in these records suggests the presence of a disabling condition. Because Plaintiff has thus failed to carry his burden of proving the existence of such a disability, there is no basis on which to conclude that the ALJ erred with respect to Plaintiff's DIB claim. *Key*, 109 F.3d at 274.

To support his SSI claim, Plaintiff relies on evidence from two office notes that the ALJ allegedly overlooked: one from November 5, 2010, in which Plaintiff reported pain and weakness

7

in his right arm and exhibited a limited range of motion in the cervical spine, and one from August 25, 2017, which documents a cardiac catheterization with stenting following a diagnosis of atherosclerotic coronary artery disease. (AR 258-59, 291-94.) According to Plaintiff, the ALJ's failure to discuss these particular findings demonstrates that he improperly "cherry pick[ed]" the evidence, which led to the omission of additional functional limitations from the RFC. (Docket No. 20-1 at 10.)

The ALJ did in fact reference the two records in the administrative opinion, noting that although Plaintiff reported right upper extremity pain and a prior carpal tunnel release procedure in November 2010, a physical examination revealed no signs of impingement. (AR 22, 258.) The ALJ also highlighted notations from the August 2017 record indicating that Plaintiff retained symmetric strength and sensation and normal deep tendon reflexes in the bilateral upper extremities. (AR 22-23.)[3]

Moreover, and despite Plaintiff's suggestion otherwise, the ALJ was not required to explicitly detail all findings from every note in the administrative record. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). This is especially true given that Plaintiff's complaint of right arm weakness in November 2010 was approximately two years after the DLI and nearly seven years prior to his application date, which places the record well outside the relevant time periods. *See Nagle v. Comm'r of Soc. Sec.*, 191 F.3d 452 (table), 1999 WL 777355, *1 (6th Cir. September 21, 1999) ("Evidence relating to a time outside the insured period is only minimally probative[.]") (citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920

---

[3] Nonexertional limitations such as handling and fingering fall under the category of manipulative limitations, which the Commissioner generally defines as "bilateral manual dexterity." Social Security Ruling 96-9p, 1996 WL 374185, at *8 (July 2, 1996).

(6th Cir. 1987)). Plaintiff's reliance on the August 2017 record is similarly unavailing because he does not explain how the notations contained therein warrant assignment of additional functional limitations.

However, Plaintiff presents a compelling argument that the ALJ impermissibly failed to evaluate the opinion of a medical source when formulating the RFC. Only two opinions regarding Plaintiff's physical condition can be found in the administrative record, one of which comes from Dr. Charles Settle, a non-examining State agency physician at the initial state of the application process who found that, with respect to Plaintiff's DIB claim, the available medical evidence was "ultimately insufficient to fully assess the possible functional limitations … without functioning information for [the] time frame." (AR 56.) For Plaintiff's SSI claim, Dr. Settle similarly concluded that the medical evidence was "ultimately insufficient to fully assess the possible functional limitations … without current functioning information." (AR 64.) Dr. Ok Yung Chung, the non-examining State agency physician charged with reviewing the DIB and SSI applications upon Plaintiff's request for reconsideration, parroted Dr. Settle's statements that the evidence before her was insufficient to confirm or disconfirm the existence of any functional limitations. (AR 73-74, 82-83.)

Notwithstanding these indeterminate reports, the ALJ concluded that these "opinions" were unpersuasive based on the following rationale: "In the paragraphs above, the undersigned explained finding that the claimant has severe physical impairments limiting him to light level work. Thus, the undersigned disagrees with the view that the claimant has no physical impairments." (AR 23.) But neither Dr. Settle nor Dr. Chung found that Plaintiff had no physical impairments; they concluded instead that there was not enough evidence before them to determine whether Plaintiff suffered from any disabling physical limitations. Setting aside for the moment

9

Case 1:20-cv-00082   Document 25   Filed 04/11/22   Page 9 of 18 PageID #: 575

this mischaracterization, the ALJ's circular reasoning does not provide an adequate explanation of his decision to reject the opinions but simply restates his step two findings and the RFC formulation. This falls well short of the minimal standard required by the Commissioner's own regulations for evaluating a medical source's opinion. *See* 20 C.F.R. 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

It is not lost on the Court that the ALJ's dismissal of these opinions worked to Plaintiff's advantage since, unlike Drs. Settle and Chung, the ALJ determined that Plaintiff did have multiple physical impairments resulting in some functional restrictions. This would in many cases moot any error caused by the ALJ's faulty analysis. *Cf. Kaplun v. Comm'r of Soc. Sec.*, No. 2:14-CV-0439, 2015 WL 736475, at *6 (S.D. Ohio Feb. 20, 2015), *report and recommendation adopted*, 2015 WL 1954453 (S.D. Ohio Apr. 29, 2015) ("[A]ny error in not adopting the state agency reviewers' opinions in their entirety—as opposed to the ALJ's approach of according them significant weight but giving Plaintiff the benefit of the doubt based on is testimony—would be harmless, since that approach is also more favorable to the Plaintiff."). In this matter, however, there is no opinion evidence whatsoever on which the ALJ based the RFC formulation, which is problematic given that, despite the wide latitude afforded to the ALJ's determination, *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 432(d)(5)(B)), the ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings." *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted). Because the ALJ did just that, the Court finds that his determination lacks the support of substantial evidence.

The paucity of the ALJ's explanation for the RFC formulation supports this conclusion: "the above residual functional capacity assessment is supported by the claimant's hearing testimony; the undersigned's observations; a thorough review of the record; and the medical opinions of Doctors Joslin and Williams." (AR 24.) Plaintiff's testimony included statements that "stamina" issues caused by heart problems represented the main obstacle hindering his capacity for full-time work, but he also asserted that ongoing back pain, swelling in his leg, and a burning sensation in his arm limited his ability stand and use his upper extremities. (AR 39, 42-43.) The ALJ rejected the veracity of Plaintiff's statements regarding his ability to lift, carry, sit, stand, and walk based only on a "normal" chest x-ray finding from November 4, 2010—a date that is notably outside of the relevant time period and almost seven years before Plaintiff's hospitalization following chest pain—and an August 2017 echocardiogram that "revealed … a left ventricular ejection fraction [of] 50-55%" because such evidence purportedly "fails to support his allegations as to shortness-of-breath and chest pain." (AR 22.) However, it is not clear how this ejection fracture finding, a percentage that the interpreting physician noted was "visually estimated" (AR 390), comports with the ALJ's finding that Plaintiff retains the ability to perform light work, which requires "a good deal of walking or standing, or … sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).[4] Perhaps there is a correlation that could be explained by a medical source. But there is certainly nothing identified in the administrative opinion that "draws [an] accurate and logical bridge" between this evidence and the

---

[4] Notably, a physical examination performed at the same time the x-ray was taken revealed "limited cervical spine extension" and a "positive Spurling's maneuver" (AR 258), which indicates the presence of "nerve root compression" and pain that "can affect your neck, shoulder, or arms." What is a Spurling Test? https://www.webmd.com/back-pain/what-is-spurling-test (last visited April 8, 2022).

ALJ's RFC formulation. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829-30 (E.D. Mich. 2017).

It is similarly unclear how the ALJ's observations of Plaintiff, expressed through the ALJ's statement that he "observed the claimant sitting for almost 30 minutes at the hearing without exhibiting any significant signs of pain or physical distress from the perspective of a lay observer" (AR 22), provides any support for the RFC. Plaintiff never alleged the inability to sit for under 30 minutes without showing "significant signs" of discomfort. To the contrary, he testified that he was "not able to go for a long period of time without having to sit down," and estimated that he could stand for only 30 minutes before needing to sit down. (AR 39, 42.) While it is true that an ALJ is permitted to "consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements" regarding a claimant's alleged symptoms, Social Security Ruling 16-3p, 2017 WL 5180304, at *7 (October 25, 2017), such consideration must include a reasonably accurate understanding of the claimant's testimony.

Nor does the ALJ's claim that a "thorough review of the record" provides meaningful support for the RFC. After acknowledging that Plaintiff previously underwent surgery on his right knee and cervical spine "years ago," the ALJ dismissed these impairments based on a single emergency room record from August 23, 2017, which noted "normal inspection" of Plaintiff's neck and back with a full range of motion "throughout his extremities." (AR 22, 297, 322, 367.) The Court is initially skeptical that symptoms relating to a previous right leg amputation and degenerative disc disease of the cervical and lumbar spine were the focal point for an attending physician treating an individual in the throes of a cardiac episode. But even accepting the premise that these notations do provide material insight into the condition of Plaintiff's musculoskeletal system, the treating cardiologist actually documented a *decrease* in Plaintiff's musculoskeletal

12

range of motion the following day. (AR 377, 382.) While an ALJ is not required to discuss every item in the administrative record, he "may not ignore an entire line of evidence that is contrary to the ruling." *Craig v. Colvin*, No. 3:12-cv-0333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (quoting *McCombs v. Barnhart*, 106 F. App'x 480, 484 (7th Cir. 2004)).

Finally, the ALJ claims that the opinions of Drs. Rebecca Joslin and Brad Williams, two non-examining State agency physicians who were retained to assess Plaintiff's mental functioning, provide support for the RFC. The ALJ describes these opinions, which he found to be persuasive, as concluding that Plaintiff had "no medically determinable and severe mental impairments." (AR 23.) But again, the ALJ misrepresents the reports of these examiners, which in fact echo the statements of Drs. Settle and Chung that "there is insufficient evidence to evaluate the claim." (AR 57, 65, 75, 84.) There is thus no "medical opinion" in the administrative record, defined as "a statement from a medical source about what you can still do despite your impairment(s)," 20 C.F.R. § 416.913(a)(2), let alone one that supports the ALJ's RFC.

The inconclusive findings of Drs. Joslin and Williams underscore the predominant issue in this case, which is the lack of medical evidence to bolster any decision with respect to Plaintiff's functional capacity. Defendant goes to great lengths to emphasize Sixth Circuit descriptions of the ALJ's proprietary role in formulating the RFC. *See, e.g., Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) ("[T]he premise of Reinartz's argument—that the ALJ lacked the capacity to make this determination—is wrong."); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("To require the ALJ to base her RFC finding on a physician's opinion,

13

would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.") (internal citation omitted) (cleaned up). But in each of these cases, the ALJ was able to weigh evidence in conjunction with definitive medical opinions from providers and non-examining physicians alike. *See Reinartz*, 795 F. App'x at 449 (noting that the ALJ weighed the opinions of a primary care provider and a treating psychologist against the claimant's daily activities); *Mokbel-Aljahmi*, 732 F. App'x at 401 (affirming ALJ's rejection of three treating providers and multiple consultative examiners in light of the ALJ's "laborious evaluation of the medical record"); *Rudd*, 531 F. App'x at 727-30 (affirming ALJ's decision to discount opinions from a state agency physician and a provider who saw claimant four times).

In contrast, the ALJ in this matter constructed an RFC based on raw medical data, which he was not qualified to do. *Dillman v. Comm'r of Soc. Sec.*, 990 F. Supp. 2d 787, 795 (S.D. Ohio 2013). Instead, the ALJ "must generally obtain a medical expert opinion when formulating the RFC" unless the claim is "totally groundless" and can be dismissed on the medical evidence alone. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Because the ALJ concluded that Plaintiff suffered from multiple "severe" impairments that "significantly limit the ability to perform basic work activities" at step two of the evaluation (AR 22-23), the current claim cannot reasonably be characterized as "totally groundless," and the ALJ committed reversible error by failing to procure a medical opinion regarding Plaintiff's functional capacity. *See Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) ("As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations … to fulfill the

responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing."). The Court thus finds that remand is necessary for an additional administrative hearing and further consideration of Plaintiff's claims.

The Court pauses to stress that the record in this case does not even remotely, much less "adequately," establish Plaintiff's entitlement to benefits so as to obviate the need for further administrative proceedings. *Holtman*, 441 F. Supp. 3d at 609. Quite the opposite, the scarcity of evidence in the record is precisely the reason that remand is necessary.[5] But a medical expert would presumably be able to interpret the medical findings available and produce an opinion regarding the functional restrictions, if any, to which Plaintiff is subject. As such, the Court recommends that, upon remand, the ALJ be required to obtain the opinion of a medical expert with respect to Plaintiff's physical functional limitations.[6] While the decision to require a consultative examination is typically within the discretion of the Commissioner, *see* 20 C.F.R. § 416.920b(b)(2)(iii) ("We may ask you to undergo a consultative examination at our expense …"), the Court finds that such an examination is appropriate in this matter. *See Shipman v. Comm'r of Soc. Sec.*, 271 F. Supp. 3d 899, 907-08 (E.D. Mich. 2017) (noting that an ALJ is "authorized … to order additional testing if the existing medical sources do not contain sufficient

---

[5] The Court also recognizes several records that are unfavorable to Plaintiff's position, including notations from the Commissioner that Plaintiff filed an earlier application for DIB in 2013 (AR 54, 62, 70, 79)—something that is not addressed in the ALJ's opinion—and indications that Plaintiff has previously abused prescription narcotics. (AR 265-67.)

[6] Plaintiff testified during the administrative hearing that he currently has no significant problems with depression or anxiety (AR 45-46), and his brief contains no argument that he suffers from disabling mental limitations. The ALJ therefore appropriately concluded that Plaintiff does not have a severe mental impairment, and the Court will not recommend that the ALJ obtain additional evidence concerning Plaintiff's mental functioning.

evidence to make a determination") (quoting *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)). The Court thus accepts Plaintiff's assertion of error and recommends that this matter be remanded for further consideration.

### 2. Plaintiff's Subjective Complaints.

Social Security Ruling 16-3p requires the ALJ to consider and evaluate whether a claimant's allegations concerning the severity of his symptoms "are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6.[7] This evaluation is based on seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7-8 (citing 20 C.F.R. § 404.1529(c)(3)). While the ALJ's findings in this regard are entitled to "great weight and deference," the ALJ's assessment must nevertheless "be supported by substantial evidence." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

The ALJ's justification for concluding that the medical evidence "does not align with the claimant's allegations" is at best a mixed bag. The ALJ appropriately highlights the absence of nerve conduction or radiographic studies to support Plaintiff's allegations of upper extremity

---

[7] Social Security Rulings "do not have the same force and effect as statutes or regulations," but they are nonetheless "binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy" that are appropriately relied upon by courts adjudicating Social Security appeals. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 n.1 (6th Cir. 2009) (citing 20 C.F.R. § 402.35(b)).

16

numbness and tingling. (AR 22.) However, the ALJ proceeds to cite Plaintiff's ability to care for his daughter as evidence that he is not subject to any manipulative limitations despite the fact that, at the time of the administrative hearing, his daughter was 18 years old and preparing to attend college on a scholarship. (AR 38.) Plaintiff's cohabitation with a legal adult at the time of the hearing would appear to have little bearing on his manipulative dexterity.

Moreover, and as discussed above, the ALJ misleadingly suggested that the absence of any "significant signs" of physical distress during the hearing somehow contradicted Plaintiff's claims regarding his ability to stand and walk. (AR 22.) Again, Plaintiff did not claim to be unable to sit for 30 minutes. This misrepresentation, coupled with the ALJ's improper interpretation of an x-ray and an echocardiogram to discount Plaintiff's claims of shortness-of-breath, precludes any finding that the ALJ's evaluation is supported by substantial evidence. The Court therefore accepts this assertion of error and again recommends that this case be remanded for further consideration.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 20) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for further consideration consistent with this report.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004)

(en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

          Respectfully submitted,

          _____
          BARBARA D. HOLMES
          United States Magistrate Judge